NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HOPE KELLY,<br><br>Defendant. | Criminal Action No. 19-MJ-4475 (MAH)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendant Hope Kelly's application for temporary release from custody in light of the COVID-19 pandemic, pursuant to 18 U.S.C. § 3142(i). After carefully considering Defendant's application, the United States of America's objections, and Defendant's letter in reply; and for good cause shown; and for the reasons set forth below; Defendant's application is **DENIED**.

**I.     RELEVANT BACKGROUND**

By Complaint dated November 7, 2019, the United States (the "Government") charged Defendant Hope Kelly ("Defendant") with two counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) and Section 2. (Compl. at 2-3, ECF No. 1). Authorities arrested Defendant on November 12, 2019, and the Honorable James B. Clark, III, U.S.M.J, conducted an initial hearing on the same date. (ECF No. 4). Defendant consented to detention with the right to make a bail application at a later time. (Id.). On January 31, 2020, I heard and denied Defendant's bail application because there was no condition or combination of conditions that reasonably assured the safety of other persons or the community. (ECF Nos. 10, 11). On April 3, 2020, I heard and denied Defendant's second bail application, again finding that Defendant posed a risk of danger to

the community if temporarily released. (ECF No. 14). On April 6, 2020, Defendant moved for reconsideration of my decision on the basis that she suffers from asthma and is particularly susceptible to the severe and potentially life-threatening health consequences of COVID-19. The Government opposes Defendant's application for reconsideration.

## II. RIGHT TO A HEARING

A criminal defendant does not have a statutory right to a hearing on a motion seeking to amend or reconsideration of a prior detention order, and it is within the Court's discretion whether to hold a hearing when presented with such motion. See United States v. Martin, No. 19-140-13, 2020 U.S. Dist. LEXIS 46046, at *6 (D. Md. Mar. 17, 2020) (citing United States v. Oaks, 793 F. App'x 744, 747 (10th Cir. 2019) and United States v. Hensler, 18 F.3d 936 (5th Cir. 1994)); see also United States v. Williams, No. 13-544, 2020 WL 1434130, at *1 (D. Md. Mar. 24, 2020) (deeming unnecessary a hearing on defendant's emergency motion for reconsideration of bond). Having conducted a hearing on April 3, 2020, I find that a hearing is unnecessary under the present circumstances. I will therefore resolve Defendant's application on the papers.

## III. LEGAL DISCUSSION

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required . . ." U.S. Const. Amend. VIII. Although the Eighth Amendment does not "grant an absolute right to bail, there is a substantive liberty interest in freedom from confinement." United States v. Perry, 788 F. 2d 100, 112 (3d Cir. 1986). Consistent with these principles, the Bail Reform Act of 1984 (the "Act") favors pretrial release and imposes a duty on federal courts to make determinations regarding the bail status of federal criminal defendants. 18 U.S.C. § 3142(a). Moreover, in the context of such bail determinations, the Act's provisions "effectively limit judicial consideration . . . to two relevant criteria: the risk that the defendant will flee and the

risk that he will pose a danger if admitted to bail." United States v. Provenzano, 605 F.2d 85, 93 (3d Cir. 1979). The court must not only determine whether an applicant poses such a risk, but also measure them "in terms of conduct that cannot be reasonably safeguarded against by an imposition of conditions upon the release." Id. at 93-94. "Whenever a court can fashion the conditions of an applicant's release in such a manner that the danger may be averted, it must do so and grant the motion for release." Id. at 94. It is therefore clear that the Court must only deny bail "as a matter of last resort." Id.

When evaluating the sufficiency of potential conditions of release, "the Court will consider the . . . '3142(g) factors': 1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance or firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." United States v. McIntyre, No. 16-13 (KM), 2018 U.S. Dist. LEXIS 5269, at *8 (D.N.J. Jan. 10, 2018) (citing 18 U.S.C. § 3142(g); United States v. Traitz, 807 F.2d 322, 324 (3d Cir. 1986); United States v. Coleman, 777 F.2d 888, 892 (3d Cir. 1985)). "Pursuant to 18 U.S.C. § 3142(e), . . . if after a detention hearing a court determines that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community,' the court must Order the detention of the person before trial." United States v. Vargas, No. 13-2044 (JS), 2013 U.S. Dist. LEXIS 88944, at *12 (D.N.J. June 25, 2013).

Even after a judicial officer issues a detention order, however, 18 U.S.C. § 3142(i) permits a judicial officer to issue a subsequent order for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

3

I have already ruled on the Section 3142(g) factors in relation to Defendant's second bail application. (ECF No. 14). Defendant's instant application asks that I reconsider the denial of bail on the grounds that the COVID-19 pandemic, together with her underlying asthma condition, constitutes a "compelling reason" under Section 3142(i) for her temporary release.

In the wake of COVID-19, I consider Defendant's application with the utmost gravity. It is well established that a pretrial detainee has a right under the Due Process Clause to reasonably safe conditions, including but not limited to medical care. See, e.g., City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (holding that the Due Process Clause requires government to provide medical care to pretrial detainees); Bell v. Wolfish, 441 U.S. 520, 535 (1979) ("[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). And although COVID-19 is a recent and evolving development, courts addressing similar applications have allowed that COVID-19, in conjunction with other factors particular to a defendant, may constitute an emergency warranting relief under the Bail Reform Act for that defendant. That is to say, the COVID-19 pandemic is not, by itself, a basis for release of a pretrial detainee for which the Court has already held a detention hearing and ordered the defendant detained. Instead, the paramount consideration under Sections 3142(g) and (i) continues to be the individual circumstances of the particular pretrial detainee. See, e.g., United States v. Bilbrough, No. 20-0033, 2020 U.S. Dist. LEXIS 58337 (D. Md. Mar. 20, 2020) (emphasis added); Martin, 2020 U.S. Dist. LEXIS 46046, at *4-5. As the court in United States v. Clark noted:

> [A] defendant should not be entitled to temporary release under section 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under section 3142(i).

No. 19-40067, 2020 WL 1446895, at *1 (D. Kan. Mar. 25, 2020) (emphasis added).  Indeed, it is by making an individual assessment on a case-by-case basis that courts around the country have granted and denied defendants' applications for temporary release because of COVID-19.  See, e.g., cases where courts denied applications for temporary release, United States v. Bonafe, No. 19-862, 2020 WL 1467146 (S.D.N.Y. Mar. 26, 2020); United States v. Steward, No. 20-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Clark, No. 19-40068, 2020 WL 1446895 (D. Kan. Mar. 25, 2020); United States v. Williams, No. 13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020); United States v. Hamilton, No. 19-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); and cases where courts granted applications for temporary release, United States v. Felella, No. 19-79, 2020 U.S. Dist. LEXIS 49198 (D. Conn. Mar. 20, 2020); United States v. Perez, No. 19-297, 2020 U.S. Dist. LEXIS 51867 (S.D.N.Y. Mar. 19, 2020); In re Extradition of Manique, No. 19-71055, 2020 WL 1307109 (ND Cal. Mar. 19, 2020).

I have already decided that Defendant is a danger to society and detained her accordingly.  The question to be answered now is whether her susceptibility to a more serious illness overcomes the initial (and current) analysis of the Section 3142(g) factors that she is such a danger.  More simply, and mirroring the language of Section § 3142(i), is there a compelling reason to overcome my initial determination that Defendant remain detained?

Defendant is a twenty-nine-year-old individual who suffers from asthma.  Her counsel represents that she has received treatment for asthma while at Hudson County Jail and that she is currently prescribed a rescue inhaler when she exhibits symptoms that affect her breathing.  Her counsel also represents that she has previously been prescribed steroids to treat her asthma.  Defendant's counsel points to the World Health Organization's ("WHO") Report of the WHO-China Joint Mission on Coronavirus Disease 2019, which concludes that "[i]ndividuals at highest

risk for severe disease and death include people aged over [sixty] years and those with underlying conditions such as hypertension, diabetes, cardiovascular disease, chronic respiratory disease and cancer." Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 24, 2020), at 12, https://www.who.int/docs/ defaultsource/coronaviruse/who-chinajoint-mission-on-covid-19-final-report.pdf. WHO characterizes asthma as a chronic respiratory disease. Health Topics, Chronic Respiratory Diseases, World Health Organization, https://www.who.int/healthtopics/chronic-respiratory-diseases#tab=tab_1. Defendant's counsel also points to statistics of COVID-19 cases in the Hudson County Jail, stating that as of April 2, 2020, the facility had forty (40) confirmed cases of COVID-19, twenty (20) cases of which were inmates.

Defendant's counsel reiterates several points presented to me in Defendant's second bail application: that Defendant has no prior felony record; that although the offenses charged are of a serious nature, Defendant's role in the offense was limited to that of the "driver;" and that Defendant has a stable residence in which to reside with a stable and responsible third party custodian, Ms. Earlina Oxner. Defendant's counsel proposes home incarceration with twenty-four-hour lockdown except for medical reasons, approved by Pretrial Services. I previously expressed concern that Ms. Oxner is the owner of the car that Defendant allegedly drove in the robbery, though it is argued that Ms. Oxner has disclaimed any knowledge that her car was being used for criminal activity. Particularly troubling is that Defendant also lived with Mx. Oxner when Defendant partook in the alleged criminal activities. This is not a criticism of Ms. Oxner, who is a teacher and holds an additional, second job as well. Ms. Oxner has no criminal record and has been vetted by Pretrial Services, though Pretrial Services shared in the concerns about Defendant

returning to Ms. Oxner's home. These reservations prevent me from finding Ms. Oxner to be a suitable third party custodian.

In opposition to Defendant's application, the Government does not dispute that Defendant has asthma or that asthma is an underlying condition that may make an individual more susceptible to serious illness should the individual contract COVID-19. The Government's primary position is that, based on the cases emerging from courts around the country, having asthma (or a present medical condition, in general) is not, by itself, a compelling reason that justifies Defendant's temporary release, particularly when (1) Defendant has not alleged that she received or is receiving inadequate medical care while incarcerated, and (2) the facility Defendant is housed in has implemented a number of protocols beginning in early March of 2020 to ensure the health and safety of its inmates, detainees, and staff.

For instance, Hudson County Jail has recently housed, on average, six-hundred (600) inmates and three-hundred (300) ice detainees per day. Measures to protect these individuals and the facility's staff include, but are not limited to: implementing a facility-wide lockdown; sanitizing all housing units no less than three times per day; implementing comprehensive medical screening procedures of incoming arrests; checking the temperatures of staff prior to them entering the facility; suspending all social visitation and facility tours; implementing new food-safety handling procedures, whereby only staff handle food preparation; providing all staff with Personal Protective Equipment ("PPE"); increasing the number of medical staff available on a twenty-four-hour basis at the facility; and housing inmates who have tested positive for COVID-19 in a designated, isolated unit. Nonetheless, the insidious nature of this disease is such that as of April 6, 2020, two (2) ICE detainees have tested positive for COVID-19; twenty-four (24) county and federal inmates have tested positive for COVID-19; fifty-eight (58) facility staff members have

tested positive for COVID-19; and one (1) member of the correctional staff and two (2) nurses have died from complications from COVID-19.

After carefully evaluating the record, including Pretrial Service's investigation and recommendations, and taking careful consideration of the number of COVID-19 cases at the Hudson County Jail, I find that Defendant's asthma condition, without more, does not establish a compelling reason to grant her temporary release pursuant to Section § 3142(i). In making this decision, I do not take lightly that Defendant's case, and all similar cases, present extremely difficult circumstances. No one—not jail officials or judicial officers—wants to put someone in unnecessary danger. But it cannot be denied that the Hudson County Jail where Defendant is housed is taking unprecedented steps to contain and stop the spread of the virus, as well as provide immediate and comprehensive treatment to those it afflicts.

While the reality of this public health crisis is that there is no guarantee that infection of new inmates will not occur, this is true anywhere in society. Should Defendant be released, I do not know what awaits her on her ride home or in the home of Ms. Oxner. I do know, however, that Defendant has been isolated from those who test positive for COVID-19 or are symptomatic. If in the worst case scenario Defendant contracts COVID-19, she has immediate access to medical staff on a twenty-four hour basis. I weigh this factor heavily, given that Defendant has presented no symptoms of COVID-19, that she has not alleged inadequate treatment at the Jail, and that public hospitals and clinics are overwhelmed and working beyond capacity to treat and save those with COVID-19. For these reasons, I will deny Defendant's application for temporary release, as she has not demonstrated a "compelling reason" under 18 U.S.C. § 3142(i).

IV. **CONCLUSION**

Based on the foregoing, Defendant's application for temporary release pursuant to 18 U.S.C. § 3142(i) is **DENIED**.  An appropriate form of Order accompanies this Opinion.

**Dated: 4/9/20**                                      <u>s/Joseph A. Dickson            </u>
                                                       **United States Magistrate Judge**